*Staples, J.
The law is well settled that where an executor or administrator having assets in his hands, becomes the guardian of the legatee or distributee, he may elect to hold the share of such legatee or distributee in his character of guardian; and thus while he charges his sureties in the guardian bond he exonerates those in the administration bond. And it is equally well settled, that in order thus to shift the responsibility from one class of sureties to the other, some distinct act or declaration is necessary on the part of the executor or administrator, indicative of his intention to hold the fund in his character of guardian. Myres v. Wade, 6 Rand. 444; Suope v. Chambers, 2 Gratt. 319; Alston v. Munford, 1 Brock. R. 266, 278; note 6.
These principles are not controverted by the counsel on either side. While, however, they have a strong bearing upon the point in controversy they do not cover the entire ground. The question arising here involves some additional issues necessary to be considered. This will be better understood by a brief reference to the facts of the case.
The testator Robert T. Gregory, died in October 1856. James A. Gregory, one of the executors appointed by the will, qualified as such shortly thereafter. In April 1860 he also qualified as guardian of Rosa B. Gregory, an infant daughter of the testator and the principal legatee under the will. Both as executor and as guardian he executed *94 bond with sureties for the faithful performance of the duties of these several offices. As executor he received assets to a large amount; and at the time of his qualification as guardian in 1860, there was an acknowledged balance against him of more than four thousand dollars. Neither at that time nor at any subsequent period, had he *in his possession or under his control, any money, bonds, stocks, credits or assets of any description belonging to the estate of his testator, but this balance was the executor’s own indebtedness growing out of assets received by him and wasted or converted to his own use. This fact is proved by the executor himself, and is not controverted.
It is also claimed and not denied, that the executor after his qualification as guardian, by distinct acts and declarations more particularly to be adverted to hereafter, elected to charge himself as guardian with the balances due by him as executor. The controversy here is not between different sets of sureties; but between the infant legatee and the sureties in the administration bond. The guardian is himself a bankrupt; and the sureties upon that bond are in doubtful circumstances, if not entirely insolvent.
The ground taken by the appellants, is, that the same person being both executor and guardian, he had the right to decide for himself, when and to what extent he would transfer his account as executor to his account as guardian; and when he has made his election to transfer and does transfer a balance from one account to another his sureties, who have trusted to his discretion, are bound in the one case and relieved in the other by his acts; and in this case such acts of election were neither slight nor trivial, but they were solemn, decisive and repeated.
On the other it is insisted by the counsel for the legatee, that while the executor may elect to hold in one character or the other property in his actual possession or under his control, he cannot thus transfer a mere liability from one set of sureties to another; that all the cases upon the subject, proceed upon the idea that the executor has funds actually in hand, and *that he is not a mere debtor for converted assets; and when he has been g-uilty of a devastavit in wasting or appropriating the estate a right of action* at once accrues upon the bond, his liability and that of his sureties becomes fixed, and can only be discharged by actual payment, or what is equivalent to it: and when the executor is also guardian, although he cannot make a payment to himself; it is incumbent upon him to do what he would do if the payment was to be made to a third person, he ought to keep the trust fund separate and distinct from his own estate, and easily identified as the property of the ward.
These views, it seems to me, are so sensible, so manifestly in accordance with the dictates of common justice, they ought to prevail, unless the authorities plainly establish a different doctrine.
The Virginia reports do not show that this precise question has ever been decided, or even considered by this court. In tl^e various cases upon this subject it does not distinctly appear, whether the executor had or had not wasted or converted the assets; but in the opinions of the judges expressions occur which plainly indicate that the funds were in the hands of the executor, or under his control, at the time of the election to-hold in the character of guardian.
Thus in Myers v. Wade, 6 Rand. 444, 446, Judge Green says: The Chancellor properly held in this case, that the sureties for the guardianship, and not those for the administration, were responsible.
Mrs. Myers’ admission in her answer that upon qualifying as guardian, she received the estates of the infants into her hands, though not conclusive, is prima facie evidence against her sureties, and is not contradicted.” The decision might have been very different had evidence been adduced contradicting the answer and showing *that Mrs. Myers had not in fact received the estate in her hands as guardian, but was a mere debtor for assets received and converted.
In Morros’ adm’or v. Peyton’s adm’or, 8 Leigh 54, it appeared that the estate of one decedent was indebted to that of another, and the same person was administrator of both, and wasted the assets of the debtor estate. This court held that if it should ultimately appear that the funds received by the administrator from the debtor estate ought to have been passed over by him to-the credit of the creditor’s estate, then the sureties for the administration of that estate should be held responsible for the omission to pass them over, and for the administrator’s devastavit of those funds.
It must be borne in mind, that at the time the funds were received by the administrator of the debtor estate, he was then administrator of the creditor estate also; and having the funds in hand it was his duty to pay himself as representative of the creditor estate if there were no debts of superior dignity against the debtor estate. And for his failure to do so his sureties for the due administration of the creditor estate were liable. Bitt Judge Tucker declared that for the waste or misapplication of the assets of the debtor estate the sureties on that administration bond would be also liable. And so in the present case, if at the time or after his qualification as guardian, the executor had funds in his hands which he ought to have passed to himself as guardian, but failed so .to do, the sureties for the guardianship might be held responsible. It would not follow that the sureties for the administration would not be also liable. In the case supposed, the executor having received assets his sureties become at once responsible. That responsibility can only be discharged by showing that he has properly applied the *funds in his hands to the purposes of the estate; or not being so needed, they have been passed to his credit as guardian. *95 These are the views, I think, substantially, presented in Morros’ adm’or v. Peyton’s adm’or. That case so far from being adverse to the ground taken in the present case, may be reg-arded rather as an authority in support of it.
I do not propose to notice the other cases decided by this court, because it is not pretended that in either of them the question now before us was discussed or considered. The point being undecided in this state, the learned counsel on both sides have been extremely diligent in examining the decisions of other states. They have found many. It would be a most unprofitable consumption of time, it would extend this opinion an undue length, to enter into a discussion of these decisions, and to attempt to show wherein they have or have not any bearing upon the present case. It is sufficient to say, that they are conflicting, and while in some of them expressions occur which seem to accord to a personal representative the power to shift the liability from one set of sureties to another even where he has converted the assets, yet whenever the question here has been distinctly made and considered, the weight of authority sustains the views presented in this opinion.
It may be proper, however, to notice briefly, the case of Taylor v. Deblois, 4 Mason R. 133. That is a leading case, and is mainly relied on by the appellant. When carefully examined, however, it will be found there is nothing in it in conflict with what has been said here.
There the same person was both administratrix and guardian. The administratrix had settled her accounts in the Probate court, which showed a considerable *balance against her due the distributees. She afterwards qualified as guardian of one of the minors; and thereupon she presented a certificate to the same court, stating that she had in her possession the funds belonging to her ward; and upon that she obtained from the court a quietus or decree exonerating her as administratrix and her sureties upon that bond.
Upon a suit afterwards brought by the ward, the question was whether the sureties on the administration or on the guardian’s bond were liable. It was alleged by the ward, that at the time the certificate was presented to the Probate court and the quietus obtained the administratrix did not have the funds in her possession or under her control; but that they had been wasted by her or her agent. That in this respect the certificate was false, and the quietus fraudulently obtained.
This was the real issue between the parties. The sureties of the administratrix relied upon the decree as conclusive in the absence of fraud, under the statutes and practice of Rhode Island. And the court held there was nothing to show that the certificate was false or fraudulently obtained. Throughout the case, both in the pleadings and in the very learned and elaborate opinion of Mr. Justice Story, it was impliedly conceded, that if the administratrix at the time of obtaining the quietus, did not have the distributive share in her possession, but had wasted the same, her sureties for the administration would still be liable to the distributee.
Row if an executor who has wasted the assets may, by his mere election, transfer his liabilities to his guardianship account, it was a matter of no sort of importance whether the certificate was true or false,, whether the administratrix had or had not the funds in hand. *Such an inquiry was altogether immaterial. It would have been sufficient to say, that the certificate itself was an open and notorious act of election to hold as guardian, and such election exonerated the administration sureties, no matter what was done with the assets. But no such ground was taken by the counsel or the court; and I think the case strongly discountenances the idea that a personal representative, who is also g'Uardian, guilty of a devastavit may at his pleasure charge one set of sureties and exonerate the other from all liability to parties interested in the estate.
It is true that Mr. Justice Story, in the course of his opinion, states another ground upon which, as he thinks, the responsibility of the administratrix and her sureties is. discharged. He says: The administratrix after the guardianship having assets to pay the amount of the distributive share it was presently satisfied by way of retainer; and by operation of law there was a transmutation of the same to her as guardian, and she no longer held the same as administratrix.
Row it is sufficient to say, that this doctrine of transmutation of possession by operation of law, where the same person is both executor and guardian, has been repudiated by this court in every case before it. It was disapproved in Morros’ adm’or v. Peyton, 8 Leigh 54; in Swope v. Chambers, 2 Gratt. 319; in Harvey’s adm’or v. Steptoe’s adm’or, 17 Gratt. 289, 300, 301; and by Judge Story himself in the subsequent case of Pratt v. Northam, reported in 5 Mason 95. As the time when the transfer is to be made depends upon the condition of the estate and the state of the administration, the court will not shift the responsibility from one set of sureties to the other without some act or declaration on the part of the representative, indicating *an intention to transfer the assets. Harvey’s adm’or v. Steptoe’s adm’or, 17 Gratt. 289, 301.
I do not deem it necessary to answer further the various cases upon this subject, but will refer to Phillips v. Minnings, 14 Eng. Ch. R. 309, 315; Harrison v. Nard, 3 Dev. Law R. 417; Claney v. Carrington, Id. 529, and especially to the case of Conky, Judge v. Dickinson et als., 13 Metc. R. 51. Tn the latter case the question arising here was discussed and carefully considered. The Supreme court of Massachusetts lays j down the doctrine broadly, that if the stireI ties on the bond of the executor were liable- *96 by reason of his misapplication of the assets, it was not competent for him to transfer that liability to his sureties on the guardian’s bond. The assets were never in the possession of the guardian as such; nor was there any means by which he could obtain possession in that character. He could not sue himself; and he is not chargeable on the ground, that an executor or administrator is chargeable for a private debt which he owes the estate. That principle is grounded on the necessity of the case; and no such necessity exists in the present instance.
It seems to me that this view is well nigh conclusive. The ground usually taken in opposition to it is, that as the executor, being also guardían, cannot sue himself nor make a payment to himself, he must from the necessity of the case, have the right to charge himself in either character. The answer is, that if the executor does his duty no suit is required. It is only necessary for him to keep the funds of the estate separate and distinct from his own, faithfully apply them to the purposes of the estate if needed, and when the administration is closed, transfer the surplus in his *hands to the guardian account, and the obligation of his bond is at once discharged and the sureties released. This court said in Morrow’s adm’r v. Peyton’s adm’r, that when the same person is representative of both debtor and creditor estate, it is his duty as representative of the debtor estate, to pass the funds over to himself as representative of the creditor estate. The same rule applies when the same person is both guardian and executor. Having the funds in his hands as executor, he may elect to hold them in his character of guardian ; and his sureties will be bound by his election. In this way he fulfills the condition of his executorial bond as completely as if he had made the payments to a third person.
The rule which allows an executor guilty of a devastavit, at his pleasure to shift his liabilities from one set of sureties to another, is calculated to produce much inconvenience and injustice. Its effect is to hold out a premium for fraud and collusion by giving the power to the executor to favor one set of sureties at the expense of the other, without fear of detection and exposure.
It enables him at his pleasure, to transfer a liability from the party who ought primarily to bear it, to innocent parties, who ought not to be the sufferers.
It enables him, if so inclined, to defeat the just claims of the distributee by shifting the responsibility from capable and solvent sureties to those that are doubtful and insolvent.
It clothes a defaulting fiduciary who has wasted a trust fund, with an unlimited discretion, which ought to be accorded only to one who has faithfully performed his duty.
And finally, it takes from the sureties a strong motive to see to it that the personal representative faithfully discharges all the trusts and obligations of his office.
It is said, however; that much of the evil thus apprehended is imaginary, as this right of election can only be exercised by an executor or administrator whose solvency is unquestioned. But it is often difficult if not impossible to determine, especially after the lapse of years, what was the pecuniary condition of the executor at a given time. He may be a man of fortune to-day and a bankrupt to-morrow. He may be apparently possessed of ample means and at the same time overwhelmed with debt. The'law does not look to the solvency of the fiduciary, but to that of his sureties. The object in taking the bond is to protect parties interested ag'ainst losses and contingencies of this very character.
In the present case the executor is a bankrupt. He tells us, however, that before the war he was possessed of an estate amply •sufficient to discharge all his liabilities. It appears that his bankruptcy -was the result of debts contracted almost exclusively prior to the year 1860. Within fifteen months after his qualification as executor he had wasted or misapplied the assets to the amount of two or three thousand dollars; and within the next two years succeeding he had wasted more than two thousand dollars besides. The executor has never replaced the amount, nor attempted to do so. The funds were probably used in the payment of his private debts, or in the support of h'is family. It may be fairly presumed, that at no time could he have replaced the amount except by a sale of property. Upon his qualification as guardian he quietly transfers the devastavit to that account, and thus relieves himself and his sureties from any suit upon the administration bond. But even after he had become guardian his *settlements before the commissioners were made in his executorial capacity; and these settlements were continued down to the 1st of January 1862; on which day a large balance is reported against him as executor. It does not appear that any other settlements were made during the war. The only transfer made to the guardianship account before the year 1866, consists of entries in the executor’s private account book, made after his qualification as guardian in the year 1860. Ho such transfer appears by any of the settlements made in the County court.
The executor tells us he presented to the commissioner his book as guardian and asked him to make the settlement in that way; but the commissioner said there was but one legatee and it made no difference in which way the settlement was made.
Under our statutes and rules of practice these settlements before the County courts are entitled to peculiar respect and consideration. They ai-e the sources to which creditors and legatees look for information touching the administration of the estate, and upon which sureties on the administration and guardian bonds rely to ascertain the nature and extent of their own liabilities. When a fiduciary thus charges himself with assets, when he deliberately holds himself out to the world as chargeable in a *97 particular character, neither he nor his sureties should be permitted to destroy the effect of admissions thus solemnly made, by any mere private entries of the executor himself, or by parol proof of verbal instructions given to the commissioner who made the settlements. As the records show ■one state of facts, and the executor’s account book shows another, we must look, I imagine, to the records only. These show that he was never charged as guardian with these balances until the year *1866. In that year a bill was filed in the Circuit court of Mecklenburg in the name of the ward, by her next friend, against the guardian and executor, asking for a settlement of his accounts in both capacities. In the progress of the suit the accounts were referred to a commissioner, and a settlement made by him. It seems that the commissioner refused to recognize the transfers made by the executor to his guardianship account in 1860. He brings the executorial transactions down to the 1st of January 1863; and on that day he finds a balance against the executor of nearly five thousand dollars. The commissioner then opens a guardianship account, and transfers to that account the executorial balance just mentioned ; and this account is brought down to the 1st of September 1866.
The bill was filed the first Monday in July; the answer of the executor and guardian on the same day. Two months thereafter, on the Sth September 1866, the order for an account was entered; the account was taken and completed on the same day, and a decree rendered confirming it on that day.
It is admitted that the infant had no agency in bringing the suit, that it was brought by the executor, and conducted by him and in his interest throughout. It was to all intents and purposes his suit, in which for all practical purposes, he was both plaintiff and defendant. Neither the sureties •on the administration bond nor the sureties on the guardian’s bond were parties to it. This decree is relied on as conclusively settling the rights of the parties. In my judgment it binds no one except the executor and guardian. It may show an election in 1866, on the part of the executor, to transfer his liabilities to his guardianship account. It cannot operate as an election and transfer in 1863, when there was no such election and *transfer, and in the very teeth of the public records to the contrary. Nor can it operate as a release of .a previous well ascertained liability on the part of the executor and his sureties, for a devastavit continued and acknowledged for years upon the public records. Had the sureties upon the guardian’s bond been made parties they might be bound; but their liability would be merely cumulative, and would not affect that of the sureties for the administration. There is nothing in the decree which professes to exonerate them.
The executor’s election to hold as guardian could not have any such effect, according to the principles already discussed. No such election would be permitted at this late day, after such a length of time, except upon the most satisfactory proof of the entire solvency of the executor himself and the sureties upon the guardian’s bond. The latter are confessedly in doubtful, if not insolvent circumstances. How they were in 1866 we do not know. We do not know what was the condition of the former at that time. We do know that he went into bankruptcy under the act of 1867 upon debts contracted before the war; and the reasonable, the fair presumption is, that he was much embarrassed if not insolvent in 1866.
I do not mean to impute any bad faith, or unfair conduct, or improper motives, to this executor. He is represented as a conscientious and honorable man. Whatever may have been his motives, however fair his proceedings, the proposition to my mind is not tenable in law or equity, that he can be permitted by his mere fiat to exonerate the only solvent sureties, the parties who are justly liable, and compel this legatee to seek redress upon a doubtful bond against parties who are not properly chargeable for the loss of this estate.
*In every point of view in which the case can be considered, I think the decree of the Circuit court is clearly right, and ought to be affirmed.
The other judges concurred in the opinion of Staples J.
Decree affirmed.