BURKS, J.,
delivered the opinion of the court.
Upton Edmondson, by deed of date January 15, 3828, and recorded the same day, in consideration, as therein expressed, of the love and affection which he entertained for his wife and child and in order to secure a support for them, conveyed all of his property, real and personal, among the latter a number of slaves, to William Bagley, in trust as follows: “The said William Bagley and his heirs shall permit the profits of all the property hereby conveyed to go to the support and maintenance of the said-Upton Edmondson and Frances his wife and his child now living and the children which the said Upton may hereafter have, so long as the said Upton and Frances his wife, or either of them, shall live, and after their death, the said Wm. Bagley shall convey the aforesaid property to the said Upton Edmondson’s children then living; and if any of said children shall have died before the death of both the said Upton and his wife,-living child or children shall take the portion which its or their father cr mother (as the case may be) would have been entitled to if then living.”
*440 The deed contains this further provision: “And it is hereby understood that it is not the design of this *deed to defraud any one of the creditors of said Upton of any just and legal claims they may now have against him, but said William Bagley and his heirs shall have the property hereby conveyed for the uses aforesaid, free from and not subject to the control, contracts or debts which the said Upton may hereafter enter into or incur.”
Bagley (the trustee) died in 1833. The estate was without any regularly appointed trustee from that time until 1863, when Upton Edmondson was appointed trustee by the county court of Lunenburg qounty in proceedings had on a bill in chancery filed by him in the names of himself and his wife against his grandchildren, who are appellants here. He died in 1873. His wife survived him and died in 1874. The grandchildren aforesaid, who survived her, it is admitted, are alone entitled to the trust property, or what remains of it, under the limitations of the deed of 1838.
From the death of Bagley in 1833 until the death of Upton Edmondson in 1873, and probably from the date of the deed (1838), a , period of forty years, the latter continued in the possession of the trust property, managing, controlling and using it pretty much as if he had the absolute ownership; and in the interval between 1833 and 1863 he sold several of the trust slaves, received the proceeds, appropriated them Ito his own use, and never accounted for the same or any part thereof to the appellants or to any other person.
The claim of the appellants is. that the estate of Upton Edmondson is liable to them for these proceeds; that they constituted a trust fund in his hands; that a portion (the price of two of the slaves) was invested by him in certain mill property in the proceedings mentioned, which, at their option, shall be treated as trust property; and that as to the residue of said proceeds (the price obtained for three other slaves), and ^indeed as to the whole proceeds, if no portion was invested as aforesaid, the liability of the decedent’s estate is for a debt due by him as “trustee for persons under disabilities.” and that such debt is entitled, in the application of the assets of the decedent to the satisfaction of the demands against him, to the priority accorded to fiduciary debts by our statute regulating the order in which debts of a decedent, shall be paid by his personal representative. See Code of 1873. ch. 136, § 35; Acts of 1869-70, p. 438.
Upon exceptions taken to the commissioner’s report made under orders directing accounts, the circuit court, while of opinion that Upton Edmondson sold the absolute estate in the slaves was yet further of opinion, that no portion of the proceeds of sale was invested in the mill property, that the claim of the appellants was not a fiduciary debt entitled to priority in the administration of the assets of said decedent, and, moreover, that the claim was barred by the act of limitations. The decree of the court, the same appealed from, was in conformity with this opinion.
By recurring to the extract from the deed, it will be seen, that the remainder in the trust property is limited to the children of the grantor who may be living at the death of the survivor of himself and his wife, and to the descendants of such of them as shall have theretofore died. The limitation therefore is contingent as to the persons to take the remainder, and at the time the estate vested in Upton Edmondson’s grandchildren, all property in the slaves covered by the deed had perished by the results of the late war. How far and in what manner, if at all, the rights of the appellants in the present case might be effected by this state of •facts was a question suggested to the minds of some of the judges by reading the record after the cause had been submitted, and as that question had not been ♦argued before the court, counsel were invited to present their views upon it, which they have done in notes giving us much aid in our investigations. We shall dispose of that question first.
It is argued for the appellee, that if Upton Edmondson had not sold the slaves the property in them would have been inevitably destroyed by the cause which effected their emancipation before the rights of the appellants vested, and therefore they were not injured by the sale and conversion, although Edmondson may have been bene-fitted thereby, and not being injured, they are entitled to no relief.
To this it is replied for the appellants, that their claim is not for damages as for a trespass, where the recovery is measured by the extent of the injury done, but that their claim rests on equitable principles peculiar to trust estates; that the slaves when sold were trust property; that Edmondson was a trustee; that the sale was a breach of trust; that the appellants are cestuis que trust, and have the right to treat the proceeds^ of sale as trust funds, although the original' trust property would have inevitably perished if it had not been converted. We think this is the correct view of the case.
The doctrine is elementary, that where a trustee commits a breach of trust by a sale of the trust subject without authority, the cestui que trust (beneficiary) may, at his option, disaffirm the sale and pursue the property in the hands of a volunteer or a purchaser for value with notice of the trust, or he may affirm the sale and resort to the proceeds in the hands of the trustee, if they can be identified, or if they have been invested or converted into other property held by the trustee, or a volunteer, or purchaser with notice, and can be distinctly traced, he may, if he elect to do so, take such property in lieu of the proceeds so invested or *converted, „ or if he elect not to do that, he may have his remedy personally against the trustee.
The option in such case, says Judge Story is exclusively given to the cestui que trust, and is given -to him for the wisest purposes *441 and upon the soundest public policy. It is to aid in the maintenance of right and in the suppression of meditated wrong. Oliver & others v. Piatt, 3 How. (U. S. R.) 333, 401. The rule in equity,” says the same eminent authority, “is, that all the gain made by the trustee, by a wrongful appropriation of the trust fund, shall go the cestui que trust, and all the loses shall be borne by the trustee himself.” Ibid.
And if there is a breach of trust and an in-citable calamity destroys the property, the trustee must account tor it. 2 Perry on Trusts, § 847, and cases cited. If he acts strictly within the line of his duty, he will be responsible for no loss; but if he varies from his duty, he must account for the properly in all events. Ibid.. § 847.
Was, then, Upton Edmondson a trustee at the time he sold the slaves in question, is the first inquiry. He had not been regularly appointed such, but he had a direct equitable interest for life in the subject and was in possession. He was not wrongfully in possession. He was not a trespasser.
In Tabb’s curator v. Cabell & others, 17 Gratt. 160. 172, Judge Joynes, in his opinion concurred in by Judge Moncure (only two judges sitting), said, that “in the view of a court of equity, Mrs. Cabell as tenant for life of the slaves bequeathed to her for life, remainder to her children, was regarded a trustee;” citing as authorities for this proposition, Eearne on Rem. 414; 1 McCord’s Ch. R. 227. Swann v. Ligan; 1 Georgia Decisions 109, Martin v. Greer. See also Cheshire v. Cheshire. 2 Iredell Eq. 569, 573.
*If this proposition be correct in relation to a legal estate, it would seem to apply with at least equal force to the life tenant, in possession, of an equitable estate.
But there is another principle which seems applicable to this case, and that is, that if a person assumes to act as trustee, he shall be treated in equity as trustee, whether he has been duly appointed such or not. “There is no rule of equity law applicable to trusts,” says Judge Story, “which is more uniformly acted upon by the courts than that one who assumes to act in relation to trust property, without just authority, however bona fide may be his conduct, shall be held responsible both for the capital and income, to the same extent as if he had been de jure trustee.” 2 Story’s Eq. Juris., § 261c. See also 2 Perry on Trusts, § 846, and authorities there cited.
Now, in the case before us. the trustee appointed by the deed was dead. Upton Edmondson, one of the immediate beneficiaries, was in possession of the trust property. On a bill filed for the purpose, he might have had himself or another appointed trustee at once. He neglected or did not choose to do so. For thirty years before his appointment he held possession of the property and was all the time, to all intents and purposes, trustee de facto. While it was his right to receive the profits and income for the use of himself and his family, it was at the same time plainly his duty to take care of and preserve the corpus of the estate for the remaindermen. especially when, from the limitation under the deed and their relation to the subject, they had no very adequate means, if any at all, of protecting their own interest. lie certainly had no right to make sale of the property. If such sale were necessary or proper, a court of equity, its aid being invoked, would have ordered it and secured or directed the application of the proceeds. Indeed, it would seem, that *he had no interest in the property which could be aliened by him. The trust, as to the immediate beneficiaries, was a blended one, such as is occasionally created in family settlements. He had no separate distinct interest or estate which he could dispose of. Nickell & Miller v. Handley, 10 Gratt. 336; Markham v. Guerrant & Watkins, 4 Leigh 279.
The sale by him was of the absolute estate in the slaves. This is shown by the prices obtained and other circumstances. It was therefore a palpable breach of trust, and, upon the principles already enunciated, he was accountable therefor to the remainder-men, who stood in relation to him as cestuis que trust. The proceeds of sale in his hands were subject to the trusts under the deed, at the option of the cestui que trust. They had the right to follow those proceeds into any property in his hands in which they had been invested or into which they had been converted, or, at their option, to proceed against him personally, or against his estate in the hands of his representatives, for the value of uch proceeds. They were all under the disability of infancy and two of them were also femes covert. They asserted their rights within a very short time after their estates became vested. They could not do so before; at least with any certain benefit. Perhaps, though contingent remaindermen, they may have had the right to file a bill quia timet for the protection of the property or security of the proceeds. 2 Perry on Trusts, § 816, citing Clarke v. Devereaux, 1 S. C. 172; 2 Story’s Eq. Juris., §§ 827, 843. If so, however, their failure to resort to such precautionary or preventive remedy would not exonerate the trustee from liability for the consequences of his breach of trust.
We are therefore of opinion, that the claim of the appellants is not effected by the general emancipation *of slaves which occurred as one of the results of the late war.
An examination of Davis v. Johns, 2 Rob. R. 729, and Moorman v. Smoot & wife & others, 28 Gratt. 80, will show that the decisions in those cases are not in conflict or at all inconsistent with the principles on which the question just discussed has been disposed of.
We proceed to the consideration of the remaining questions in the case:
1. As to the claim to the mill property on the ground that the proceeds of sale of two of the slaves were invested in said propertv. The evidence on this point is very unsatisfactory, and the preponderance would seem to be against the validity of the claim. Several witnesses give declarations of Upton Edmondson, which thev nrofess to have *442 heard more than twenty years before they testified, to the effect that the purchase money obtained for the negro Jane was applied or intended to be applied towards the building of the mill, and one of the witnesses (R. H. Allen) says he recollects distinctly that Upton Edmondson sold two ne-groes, he does not know when, one of whom (Jane) was sold to Harris Edmondson for $1,300, and the other to one Cunningham for about $800; and he further says, that Upton Edmondson told him that the proceeds of sale of both of these negroes were paid for the building of the mill. These alleged declarations and statements seem to be inconsistent with the other evidence in the cause. It is very clearly proved, that the building of the mill was commenced in the fall of the year 1853 and completed in the spring of 1853, and was paid for wholly by Jones, who seems to have been interested in the property. It does not appear, that a dollar was paid by Upton Edmondson. The account was discharged in part by payments in money made in January, May, and December, 1853, *and the residue, except a small amount, was satisfied by the bond of a third party in December, 1854. It is proved by Cunningham, that he was the purchaser of Jane at the price of $750, and that he bought and paid for her in the fall of the year 1856, which was several years after the building of the mill had been completed and paid for. If his statements are true, it is impossible that the testimony of William C. Snead as to what he saw and heard in regard to the payment of $1,300, the proceeds of the sale of Jane, can be true. Without further comment on the evidence, it is sufficient to say, that it does not prove to our satisfaction that any of the proceeds of the sales of any of the negroes went into the mill property, \yhether this was so or not, however, is perhaps of little practical importance, in the view we take of the next question to be considered.
2. And that is. whether the claim of the appellants is entitled to priority, as a fiduciary debt, in the administration of the assets of the decedent, Upton Edmondson. If the claim rested solely on the ground of a constructive or implied trust, we are of opinion, that it would not be within the letter or spirit of the statute. Code of 1873. ch. 126, § 25. The terms there employed have a definite legal import' — -“personal representative” (defined Code of 1873, ch. 15, § 9)— “guardian”- — -“committee”—“trustee for persons under disabilities.” The term “trustee,” used to designate one in the class of fiduciaries mentioned, must be understood in the restricted sense of express trustee as distinguished from trustees, in a general sense, by construction or implication of law. If the latter class were intended to be embraced, the language employed is not appropriate; and, moreover, to include every debt, arising out of the vast multitude and varieiy of constructive and implied trusts, would not only bring about great confusion, *delay. and vexatious litigation in the administration of decedents’ estates, but such an enlargement of the class of preferred debts would well nigh destroy the utility of any preference among the creditors. See Price’s ex’or v. Harrison, ex’or. 31 Gratt. 114.
But the claim of the appellants is not based merely on the ground of a constructive trust. Upton Edmondson was regularly appointed trustee by decree of court in 1862, with full power to execute the trusts under the deed of 1828. Thenceforth he was an express trustee, charged with all the duties and subject to all the responsibilities of such a trustee. He became invested with the legal title clothed with the trusts declared by the deed. He was charged by intendment of law with the whole trust fund then in his hands, and also with any portion thereof which he had theretofore used or misapplied. For this latter he was debtor, and he was bound to account for and pay over the same to himself as trustee under the deed by virtue of his appointment by the decree, and to invest it so as to secure the principal for the benefit of the remaindermen. Harvey’s adm’r v. Steptoe’s adm’r & others, 17 Gratt. 289. It certainly would have been his duty as trustee, if at the time of his appointment the fund had been in the hands of or owing by some third person, to collect it, if practicable, and securely invest it, and if he had failed to do so, he would have been liable for it, in case of loss. His duty and liability are not changed by the circumstance, that he was the debtor. He was also the creditor. He could not have been expected to sue himself to compel payment, but he could have charged himself as trustee with the trust fund for which he was debtor. Whether he so charged himself or not, the law charged him, and the charge constitutes a debt due by him as “trustee for persons under disabilities,” within the meaning of the statute. He was trustee *for the remain-dermen. They were all “persons under disabilities” continuously to the time of the assertion of their rights in this case. This sufficiently appears from the record. No distinct testimony was taken in the court below to establish the fact, doubtlessbecause it was not disputed. It is repeatedly alleged in the pleadings and no where denied. It is clearly and expressly declared in the record of the case of _ Brown, &c., v. Blackwell. &c., a copy of which was filed as an exhibit with the answer of the appellants to the appellee’s bill and used as evidence in the cause without' objection or exception by any party.
3. The remaining question is, whether the claim of the appellants is barred by the act of limitations?
Clearly, it is not so barred. They could not be required, under penalty of being barred, to prefer their claim until their estate in remainder vested and their right to possession fell in by the determination of the particular estate. That did not take place till the death of Upton Edmondson’s wife in 1874, and they preferred their claim in this suit in 1875. Moreover, as before stated, they were all the time under disabilities. Rowe v. Bentley & others, 29 Gratt. 756, and Justis v. English & others, 30 Gratt. 565, are *443 the only authorities which need be cited on ' this point
It appears, that Upton Edmondson, by deed November 24, 1826, duly recorded, conveyed five negroes, to-wit: Sally and her four children, Pat, Squire, Loretta, and Henry, and their future increase, to Robert Bagley in trust to secure to Anderson Bagley the payment of a bond for $451.71. These negroes, by the same names and description. were included in the subsequent deed (1828). Two of them (for they were of the same names with those mentioned in the two deeds), to-wit: Sally and Patsy, were after-wards sold by Upton Edmondson, the former in the year 1840 and the latter *in 1845, in the lifetime of Anderson Bagley. It does not appear what was their value, at what price they were sold, or what became of the proceeds. It is possible, that the proceeds were applied to the payment of the debt to Anderson Bagley. However that may be, it is distinctly proved, that Anderson Bagley died in 1846, and his administrator found among the papers of his intestate no such bond as that secured by the deed of 1826. The only claim against Upton Edmondson found among the papers was a bond for thirty dollars not then due, and which was afterwards paid by Edmond-son to the administrator. The appellants set up no claim to the proceeds of the sale of these two negroes. Their claim is confined to the proceeds of sale of five other negroes, which the commissioner in his last report puts down at $5,000, his estimate being based, no doubt, on the deposition of Du-priest, who states, that he knew that Ed-mondson sold five negroes, whose names he gives and all of whom he knew well; that all of these negroes were young, likely, and valuable, were sold when negroes were selling well, and that Edmondson must have gotten at least $5,000 for them. These ne-groes were doubtless of those or increase of those conveyed by the deed of 1828. They were so considered in the court below and so treated by the commissioner in his report, and there was no specific exception to the report on that account.
We are of opinion, that the appellants are entitled to the said sum of $5,000 as a preferred fiduciary debt against Upton Ed-mondson’s estate, with interest thereon from the date fixed by the commissioner’s report, and that the decree of the circuit court rejecting said debt is erroneous. The decree will therefore be reversed and the cause remanded for further proceedings to be had therein in conformity with the views herein expressed.
*The decree was as follows:
This day came again the parties by their counsel, and the court, having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said decree is erroneous: therefore, it is decreed and ordered, that the said decree be reversed and annulled, and that the appellants recover against the appellee J. W. Ellis, sheriff of Lunenburg county, and as such administrator of Constance Lambert, deceased, their costs by them expended in the prosecution of their appeal aforesaid here, to be levied on the goods and chattels of the said decedent in the hands of the said administrator to be administered; and this court now proceeding to render such decree as the said circuit court ought to have rendered, it is further decreed and ordered, that the first, second, and third exceptions of the complainant to the report of Commissioner Jackson. made pursuant to the decree of the November term, 1875, and filed May 2, 1876, be overruled, and that the fourth exception of the complainant to said report, except so much of the said exception as relates to and relies upon the statute of limitations as a bar to the claim therein mentioned, which is hereby overruled, be sustained; and, in order to make the said report conform to the opinion of this court upon said exceptions, it is further decreed and ordered, that said report be modified by rejecting so much thereof as finds and reports that the proceeds of the sale of the slaves Jane and John were invested in the mill reported in account No. 2 of said report, and be further modified by substituting for the “1st class.” in account No. 1, of debts against Upton Edmondson, deceased, the statement marked “U E.” made out, approved and adopted by this court and ^annexed to this decree as a part thereof, and by further substituting the figures $15,650.99 for and in place of the figures “$12,275.89,” stated in said report as the aggregate amount of the debts of Upton Edmondson, deceased, and that the said report, as so modified, be confirmed; and this cause is remanded to the said circuit court with instructions to take such further steps in the cause and make such further orders and decrees as may be proper to subject the estate of the said Upton Edmondson to the payment of the debts stated in the report aforesaid of the commissioner as modified and confirmed as aforesaid, observing, as between the creditors now parties to the cause, the priority stated in said report as confirmed, and take such further proceedings as may be proper, in order to a final decree, in conformity with the opinion and principles herein declared and the established practice of courts of equity; which is ordered to be certified to the said circuit court of Lunenburg county.
Statement U E referred to in foregoing decree. No. 1. 1st class.
An account of debts against the estate of Upton Edmondson, deceased.
To Upton Brown, W. W. Phillips and Fanny his wife, who, before her marriage with said Phillips, was Fanny Brown; W. N. Gills and Carrie his wife, who, before her marriage, was Carrie Brown; the value of five negro slaves conveyed by deed of trust to Wm. Bagley, trustee, January 15. 1828.$5,000 00 Interest from March 9, 1874, till May, 15. 1876. 655 00
$5,655 00
Decree reversed.