*Richmond.*

BANK OF THE OLD DOMINION V. ALLEN AND ALS.

February 2, 1882.

1. SUBROGATION.—*Endorser for accommodation* paying off judgment against
   himself and the maker on protested negotiable note is entitled to be sub-
   rogated to all the rights of the holder.   He is under no obligation to ap-
   peal from the judgment, as he could not *know* that relief could be
   thus obtained.   The law imposes no such unreasonable burden on a
   surety.

2. IDEM—*Merger.*—At different terms separate judgments were had against
   endorser and maker.   On the judgment against endorser, a judgment
   was obtained in Illinois, which judgment endorser satisfied.

HELD :

> This did not extinguish the lien of the judgment against *the maker*,
> and *eo instanti* endorsor paid it, he and his assignees were entitled
> to be subrogated to lien of that judgment.
>
> *Quære :* Did the obtainment of the Illinois judgment merge even the
> Virginia judgment against the endorser ?

3. LIMITATIONS.—Last of notes given to satisfy the Illinois judgment was
   paid January, 1880.   Yet the Illinois judgment was marked satisfied
   December, 1869.   General creditors' bill filed July, 1873, to enforce
   judgment against maker, and order of account of debts, &c., entered
   October, 1873.

HELD :

> The statute of limitations does not bar the claim of endorser or his as-
> signee to be subrogated to plaintiff's rights in judgment against
> maker.   Order of account entered, all lien creditors became par-
> ties, and at liberty to assert their demands in that suit.

Appeal from decree of corporation court of Alexandria
in suit of Richard S. Allen, for himself and all other cred-
itors of William N. McVeigh, against William N. McVeigh,
J. H. McVeigh, the Bank of the Old Dominion, and others.

Opinion of the court fully states the facts and the points
raised.

*H. O. Claughton,* for the appellant.

*John Howard,* for the appellees.

BURKS, J., delivered the opinion of the court.

In an action at law in the circuit court of Alexandria by Cazenove & Co. against J. H. McVeigh & Son, as makers, and William N. McVeigh as endorser for the accommodation of the makers, of certain negotiable notes, a judgment was recovered by the plaintiffs against the makers, or against J. H. McVeigh (one of them), in Februaay, 1868, and at the succeeding August term of the court a judgment was also recovered for a less amount against William N. McVeigh, the endorser. These several judgments were docketed soon after recovery, and bound lands of the defendants in this State. William N. McVeigh (the endorser) owned land in Illinois also, and Cazenove & Co. at once took legal proceedings in that State to subject it. They recovered a judgment there upon the Virginia judgment against William N. McVeigh, and sued out execution upon it. William N. McVeigh then transferred to Cazenove & Co. several notes of third persons, well secured, to be applied to the payment of the Illinois judgment, and the execution on that judgment was returned satisfied December 21, 1869. The notes thus assigned were afterwards paid, the last payment having been made by William N. McVeigh himself in January, 1880. In December, 1879, the plaintiffs, by the written direction of William N. McVeigh, given the year before, assigned and transferred all their right, title and interest in the Virginia judgments to John Howard, Esq. Previously—to wit: in July, 1873—a creditors' bill was brought in the corporation court of Alexandria to subject the lands of J. H. McVeigh and William N. McVeigh to the payment of the liens and encum-

brances thereon, and in October, 1873, a general account of the real estate of the defendants and the liens thereon was ordered. Several accounts were taken and other proceedings had from time to time. The several Virginia judgments of Cazenove & Co. against the McVeighs were reported as liens, and it was agreed that, if liens at all, they were the first in point of time remaining unpaid, and the judgments of the Bank of the Old Dominion were the next. Mr. Howard filed his petition in the cause, claiming the benefit of the Cazenove judgments under the assignment before referred to, and praying to be substituted to the lien of the judgments against the lands of J. H. McVeigh. The bank contested his right to subrogation, but at the last hearing of the cause the court granted the prayer of the petition, and by decree ordered that the petitioner should be "subrogated to all the rights and privileges of William N. McVeigh" as to the judgments assigned by him to the petitioner.

It is from this decree the Bank of the Old Dominion obtained the present appeal.

The judgments against the McVeighs were rendered by a court of competent jurisdiction, and their validity cannot be collaterally assailed, except on the ground of fraud or collusion. No such charge is made or attempted to be proved. They were rendered after a vigorous contest, and the argument that if the endorser had brought the case before this court the judgments might or would have been reversed, as the result in similar cases shows—a result which could not have been anticipated with certainty— and that he should be denied the right of subrogation as against the appellant, because he did not seek a review by writ of error, is without force. The law imposed no such unreasonable burden on this surety. It is sufficient that he acted in good faith and resisted the recovery in the court of original jurisdiction with all the means in his

power.  It was not incumbent on him to protract the litigation of a doubtful matter in order to protect the supposed rights of third persons.  He was under no such obligation, either legal or moral.

This objection out of the way, it cannot be denied that if this accommodation endorser, who was in fact a surety, had, immediately after the judgment was rendered against him, paid it off to the creditor holding it, he would have been entitled *eo instanti*, on the plainest principles of equity, to be subrogated for his indemnity to the lien of the judgment on his principal's land, and his assignee would have had the same right.

But it is contended that this equitable principle of subrogation does not apply under the facts which have been stated.

1. It is insisted that the Illinois judgment operated as a complete merger and extinguishment of the Virginia judgment, and consequently of the lien which was incident to it, and therefore that upon the subsequent payment by the surety there was no existing lien or security of the latter judgment to which he could be substituted.

In support of the general proposition, several cases were cited, the latest being *Gould and others* v. *Hayden and others,* 63 Ind. 443, decided by the supreme court of Indiana in 1878.  In that case it was held, that where a judgment is recovered in a court of competent jurisdiction in one State, upon a judgment previously rendered in another State, the first judgment is merged in the second, and all its liens on land in the State where rendered are abandoned.

It is not necessary now to determine whether the broad proposition thus laid down in that case, or in similar cases, is sound law or not.  The learned judge delivering the opinion admits that there are respectable authorities in conflict with the proposition stated; and the exigencies of the case before us do not require a discussion of the prin-

ciples affirmed by the authorities on the one side or the other, or the expression of any opinion upon the subject.

As tending to support the doctrine of *Gould and others* v. *Hayden and others, supra,* the following cases were cited: *Cock* v, *Armstrong,* 25 Miss. 63; *Purdy* v. *Doyle,* 1 Paige, 558; *Chitty* v. *Glenn,* 3 Monroe, —; *Whiting* v. *Bebe,* 7 English (Ark.), 549; *Hanna* v. *Gray,* 3 Bush, 91; *Lipscombe* v. *Grace,* 26 Ark. 434; *Brown* v. *Clark,* 4 How. (U. S.), 4; *Denegre* v. *Haun,* 13 Iowa, 240.

*Contra,* see *Weeks* v. *Pearson,* 5 N. H. 324; *Mumford* v. *Stocker,* 1 Cowen, 178; *Griswold* v. *Hill,* 2 Paine C. C. 492; *Andrews* v. *Smith,* 9 Wendell, 53.

"The general principle governing in cases of this kind, and which applies to all securities," says Chief-Justice Savage in the case last above named, "is, that a security of a *higher* nature extinguishes *inferior* securities, but not securities of an *equal* degree"; and judgments are, of course, of "equal degree."

The record here shows that there were separate judgments against the principal and surety, as there might well be, at different terms of the court, and that the proceeding in Illinois was on the Virginia judgment against the surety, and the judgment in the former State was upon the latter judgment only. In such case, if there was an extinguishment of the former judgment, that did not affect the existing judgment against the principal. That judgment, with all its incidents and qualities, continued in full force, even at law, until it was paid. It was not paid until the surety paid the Illinois judgment, and when that was done, he at once became entitled to be substituted to the rights of the creditor on the judgment against the principal debtor; for, although the Virginia judgments were several and distinct, they were for the same debt, and when and as soon as that debt was paid by the surety, his right to substitution arose. It does not matter whether the pay-

ment was of the judgment recovered in Illinois or of the judgment against him in Virginia. Both judgments represented the same debt, and equity always looks to the rubstance rather than the forms of transactions.

2. All the other objections (requiring notice) are founded substantially on the supposed operation of the act of limitations. It is said that the transfer of the notes in Illinois satisfied the judgment in that State, and the surety's right of action, and also his right to substitution, accrued at the date of the transfer, or at least at the date (December 21, 1869) of the sheriff's return on the execution " satisfied in full by order of the plaintiff's attorney "— that this right of the surety must have been asserted within five years from the return of the Illinois execution (Code of 1873, § 8), and as it was not asserted until Mr. Howard filed his petition in 1880, it was barred. Further, that no execution was ever sued out on the judgment against J. H. McVeigh, and as no action was ever brought on that judgment, nor *scire facias* sued out to revive it within ten years after its recovery, all remedy on the judgment was barred. Code of 1873, ch. 182, § 12.

The notes were not fully paid until January, 1880; but take it that the transfer of the notes was a payment of the judgment, and the surety's right then accrued, still that right was not barred. The general creditors' bill was filed in July, 1873, and the order for an account of debts was made in October, 1873 (less than five years from the date of payment), and the act of limitations certainly ceased to run against the claim from the date of the order, if not from the filing of the bill. *Harvey's adm'r, &c.* v. *Steptoe's adm'r and others,* 17 Gratt. 289, 304; *Sterndale* v. *Hankinson,* 1 Simon, 393, 398. " It has been said," remarks the vice-chancellor in the last named case, " that if a creditor files a bill on behalf of himself and others, and permits it to be dismissed before decree, the statute would apply. I dis-

sent from this proposition; for I think that the court would protect a creditor against any accident of that kind."

As soon as the order for the account was made, all creditors having liens became parties (in a general sense) to the suit, and were at liberty to assert their demands. *Piedmont & Arlington Life Ins. Co.* v. *Maury and others,* 5 Va. Law Journal, 559, 562.

The judgment of Cazenove & Co. against J. H. McVeigh, was reported as a lien by the commissioner under the order of reference. If then unpaid, it belonged to Cazenove & Co. If paid, it belonged to the surety who paid it. There was no actual necessity of a formal written assignment of the judgment by Cazenove's executors to William N. McVeigh. He was already the assignee in equity, and by contract Mr. Howard took his place. The rights of the surety to which Mr. Howard succeeded, were in full force when the bill was filed and the account ordered, and the subsequent lapse of time pending the suit did not impair them. There was no necessity of reviving the judgment at law.

The decree of the corporation court of Alexandria will be affirmed.

JUDGMENT AFFIRMED.