79 141
f98 20

# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

NORVELL, ADM'R, v. LITTLE AND ALS.

July 17, 1884.

1. PRACTICE IN CHANCERY—*Creditors' Bill.*—Suit of distributees to ascertain and pay the debts of the estate, and to distribute the surplus, is substantially a creditors' suit.
2. IDEM—*Idem—Statute of Limitations.*—Upon entry of decree for account in such suit, time ceases to run against all creditors of the estate. *Bank of the Old Dominion* v. *Allen and als.*, 76 Va. 200.
3. PRESUMPTION OF PAYMENT—*Repellable.*—It is a well settled rule of the common law that a bond is presumed to have been paid after lapse of twenty years from its maturity. But this presumption may be repelled by satisfactory evidence. If less than twenty years have elapsed, such presumption arises not. Yet, even then, lapse of time may be relied on in connection with other circumstances, as evidence of payment. *Booker's Adm'r* v. *Booker's Rep.*, 29 Gratt. 605.
4. IDEM—*Period eliminated.*—From the twenty years between maturity of bond and action brought, the period between April 17th, 1861, and January 1st, 1869, must be eliminated as respects both the statutory bar of limitation, and the common law presumption of payment. The object of the legislature was to protect debtors from immediate enforced collections, without prejudice to the rights of creditors.
5. CASE AT BAR is one where right of action on bond accrued 13th September, 1857, and time ceased to run against it 3d December, 1881, by entry of decree for an account of debts in creditors' suit. After deducting stay period, less than twenty years remained, and common law presumption of payment arose not. Yet the record discloses circumstances, which, taken in connection with the lapse of time, sustain plea of payment.

Appeal from decree of the circuit court of Montgomery county entered 6th December, 1883, in the cause therein pending in the

name of *Little's heirs* v. *Little's administrator.* At the October rules, 1881, a bill was filed in said circuit court by the widow and heirs of John Little, deceased, for settlement and distribution of his estate. The prayer was that the creditors be convened, their debts ascertained and paid, and the surplus distributed. On 3d December, 1881, the cause was referred to a master to settle the administrator's accounts and ascertain the debts and their priorities. The account was taken and reported. On 18th May, 1882, it was decreed that certain debts be paid and the surplus distributed. In December, 1882, leave was given W. W. Norvell, administrator of Tucker H. Smith, deceased, to file his petition, and the administrator of John Little, deceased, was restrained from further distributing the funds until further order. The petition alleged that John Little's estate was indebted to Smith's estate on two bonds executed by John Little in his lifetime, to-wit: 13th September, 1857, and 28th September, 1858, respectively, the one for $600, the other for $36.70, payable to Tucker H. Smith on demand, and prayed that Little's administrator be required to pay them. Both bonds were filed and were endorsed with sundry credits, to wit: On the first: "$36, received twelve months' interest on the within per order to W. F. Smith, 1859, (signed) T. H. Smith"; "Received thirty-four dollars and fifteen cents on the within, October 8th, 1860, (signed) T. H. Smith." And on the second: "Received thirty dollars of the within amount per order on C. P. Sneed, October 20th, 1858, (signed) T. H. Smith." In answer, Little's administrator filed two pleas: 1st. "That the debts in the petition mentioned were paid on the day of their maturity by John Little in his lifetime," &c. 2d. "That more than twenty years had elapsed from the time right of action accrued on said bonds before the account of debts was ordered," &c. The bonds were mutilated, and there was in the record evidence of circumstances tending to show that they had been paid.

The cause coming on to be heard, a decree was entered 6th December, 1883, that W. W. Norvell, administrator of Tucker

H. Smith, deceased, take nothing by his petition, and that the plea of payment be sustained. From this decree, said Norvell, as such administrator, obtained from one of the judges of this court, an appeal and a writ of *supersedeas*. The remaining facts are stated in the opinion.

*Penn & Hoge,* for the appellant.

*G. G. Junkin, Taylor & Phlegar,* for the appellees.

LEWIS, P., delivered the opinion of the court:

The object of the suit was to convene the creditors, to ascertain and pay the debts of the estate, and to make distribution of the surplus. It was therefore, substantially, "a creditors' suit," and time ceased to run against the claims of creditors, certainly upon the entry of the decree for an account. *Harvey's Adm'r* v. *Steptoe's Adm'r,* 17 Gratt. 289 ; *Bank of the Old Dominion* v. *Allen et als.,* 76 Va. 200.

The defence set up in the circuit court against the claims of the appellant was based on the presumption of payment, by reason of the lapse of time in connection with other circumstances; and the only question is, whether that defence was properly sustained. By a rule of the common law a bond is presumed to have been paid after the lapse of twenty years from its maturity. If a shorter period than twenty years has elapsed the presumption does not arise ; but the lapse of time, in connection with other circumstances, may be relied on as evidence of payment. 2 Minor's Insts. (2d ed.) 758 ; 1 Rob. Prac. (new ed.) 461 ; *Booker's Adm'r* v. *Booker's Rep.,* 29 Gratt. 605. By the seventh section of the act of March 2, 1866, entitled "an act to stay the collection of debts for a limited period," it was enacted that "the period during which this act shall remain in force shall be excluded from the computation of time within which, by the operation of any statute or rule of law, it may be

necessary to commence any proceeding to preserve, or prevent the loss of any right or remedy." Acts 1865–66, pages 183. And this act remained in force until the 1st day of January, 1869. *Johnston, Trustee,* v. *Wilson's Adm'r,* 29 Gratt. 379.

The first bond is dated September 13, 1857, and is payable on demand. The period between that date and the decree for an account was twenty-four years, two months and twenty days. But the bond is subject to two credits, endorsed by Smith, the obligee, the last of which bears date October 8, 1860, and which are evidence for the purpose of repelling the presumption of payment. *Dabney's Ex'ors* v. *Dabney's Adm'r,* 2 Rob. Rep. 622. From the 8th day of October, 1860, to the entry of the decree for an account, was twenty-one years, one month and twenty-five days, from which deducting the period between the 17th day of April, 1861, and the 1st day of January, 1869 (which was seven years, eight months and thirteen days), there remains thirteen years, five months and twelve days. It is insisted, however, that the act of March 2, 1866, applies only to those cases in which the lapse of time *barred the action,* and was not designed to alter the rules of evidence.

It is true that the common law rule in question does not bar an action upon a bond after the lapse of twenty years from its maturity, and that it is a rule of evidence and not of pleading. But, nevertheless, if the creditor fails to commence his suit until after the lapse of twenty years, and then offers no evidence to repel the presumption of payment, his right to recover of the defendant is gone, provided the latter sees fit to rely in his defence on the presumption in his favor which the lapse of time affords. The result is therefore the same to the creditor as if the defence might be set up by plea in bar of the action. It is, after all, but a question of procedure, and the case is plainly within the operation of the act. The object of the act was the relief of the debtor class, in the then condition of the country, by staying for a limited period the collection of debts, and it was therefore not only reasonable, but it was the evident pur-

pose of the legislature that no right of the creditor should be prejudiced by his forbearance to sue during the time the act should remain in force. In this way the debtor escaped the harassment of immediate suit, and in the meantime the rights of the creditor were protected and preserved. We are therefore of opinion that the plea of payment cannot be sustained on the ground of lapse of time alone. But there are certain circumstances to be considered in connection with the lapse of time which amply sustain the ruling of the circuit court.

In the first place, while the record does not disclose the exact financial condition of Tucker H. Smith, the appellant's intestate, it is fairly deducible therefrom that he was of inconsiderable means, and that the solvency of Little's estate was a fact well known to him. He appears to have been engaged in farming in the county of Fluvanna, and the appraised value of his personal estate after his death did not exceed the comparatively trifling sum of $713.40, and that included stock and farming implements, a half of a crop of tobacco, and household and kitchen furniture. It further appears that some time during the war, he visited the county of Montgomery, as the agent of Mrs. Little, the widow, to collect of the administrator certain moneys in his hands on account of her interest in the estate which was paid to him. But he made no mention of the bonds in question, and asserted no claim whatever against the estate, either then or at any time afterwards. After his death, which probably occurred in the year 1876, and more than five years before the assertion of this claim in the circuit court, his widow qualified as his administratrix, but the bonds were not included in the inventory and appraisement of his estate, and it was not until after her intermarriage with the appellant and his qualification as administrator in her stead, that the claim was, for the first time, asserted by the filing of the petition in this suit, and then without any explanation for the delay in asserting it. And, lastly, the appearance and condition of the bond of September 13th, 1857, is relied on as evidence of its payment. In the

argument here the original bond was produced before the court, and it was urged by counsel that it bears unmistakable marks of alteration. Its appearance certainly strongly tends to raise sus picions of that character ; but these considerations cannot avail in support of the plea of payment. The plea of payment is a confession and avoidance, and concludes the party from denying the execution of the deed as set forth in the pleadings. *Colley's adm'r* v. *Sheppard's adm'r*, 31 Gratt. 312. But the bond when produced was *in pieces,*, and a part of one of the endorsements thereon had been cut off; and these are circumstances which may not only be considered, but which, when taken in connec-tion with the lapse of time and all the other circumstances of the case already adverted to, and in the absence of any explanatory evidence whatever, create a presumption that the bond has been paid.

In 1 Phillips on Evidence, 675, note, it is said that if a prom-issory note or bond should chance to be found in the hands of the debtor, or if it be crossed, rased, or torn in pieces, either of those circumstances will create a presumption that it has been acquitted, which presumption will remain until clear proof be brought that the debt is still owing, citing *Garlock* v. *Geortner*, 7 Wend. 198; *Palmer* v. *Gunsey*, Id. 248. No such proof has been offered in the present case, and the bond must therefore be presumed to be paid. And the same presumption arises in re-spect to the second bond, upon which the endorsement of credit by the obligee is dated October 20, 1858, or nearly two years prior to the date of the last credit on the first bond.

There is no error in the decree complained of, and the same is affirmed.

RICHARDSON and HINTON, Js., dissented.

DECREE AFFIRMED.