HELEN L. JONES v. ALICE S. DANFORTH.

FILED APRIL 21, 1904. No. 13,362.

1. **Creditor's Bill:** ATTACHMENT: JURISDICTION. When a creditor's bill
   is brought to set aside a cloud upon the title of property which
   has been seized in an attachment suit against a nonresident
   debtor, the court will look at the entire record in the attachment
   case to see whether jurisdiction was obtained therein. If from
   all the affidavits the essential facts to confer jurisdiction appear,
   the judgment will not be declared void. The defect in one affi-
   davit may be supplied by the other and, if enough appears from
   all, it is sufficient.

2. **Attachment:** PROCESS: JUDGMENT. A judgment rendered without
   substituted service on the defendant in an attachment case
   against a nonresident, whose property has been seized in this
   state, is merely erroneous and not void. *Darnell v. Mack*, 46 Neb.
   740, followed.

3. ——— : ——— : ———. If it appears that service of summons has actually been made upon the defendant and that the time given him by the summons to answer has elapsed before judgment, the fact that an error was made in the return day of the summons is merely an irregularity, which might have been taken advantage of by the defendant before judgment, but which does not render the judgment void.

4. **Deed: Record: Notice: Statute of Limitations.** The recording of a fraudulent deed is not of itself, under all circumstances, sufficient to charge all parties with notice of the fraud. When accompanied with circumstances sufficient to put a person of ordinary intelligence and prudence upon inquiry which, if pursued, would lead to the discovery of the fraud, the statute begins to run from the recording of the deed, but not otherwise. *Forsyth v. Easterday*, 63 Neb. 887, followed.

ERROR to the district court for Clay county: GEORGE W. STUBBS, JUDGE. *Affirmed.*

*Thomas H. Matters,* for plaintiff in error.

*Joel W. West, contra.*

LETTON, C.

This was a creditor's bill brought by Alice S. Danforth, as plaintiff, against Helen L. Jones, L. D. Fowler and others. It appears that L. D. Fowler is the father of the defendant Helen L. Jones; that at one time he had been in partnership with one Cowles, the former husband of the plaintiff; that Cowles died in 1890, and, after his death in 1893, she loaned Fowler, who was then in the banking and farm loan business, about $8,000, Fowler giving his unsecured promissory note for the same. That this note was renewed from time to time, and that, at the time the last note was given in 1901, Fowler gave her a second mortgage on some property in Omaha to secure the same, which property was afterwards taken by the foreclosure of the first mortgage, so that she received nothing upon the note. Fowler at one time resided in Clay county, Nebraska, afterwards moving to Omaha and living there in 1893 when the money was loaned to him,

and is now a resident of Washington, D. C. In February, 1902, Mrs. Danforth commenced an action in the district court for Clay county against Fowler, to recover the amount due upon the note, at the same time filing an affidavit for attachment and garnishment, alleging among the grounds therefor that the defendant was a nonresident of the state of Nebraska, and that the affiant had good reason to believe and does believe that each of two corporations, named in the affidavit, within the county of Clay, have possession of property of the defendant Fowler, describing it. A writ of attachment and garnishment was issued by virtue of the affidavit, and was levied by the sheriff of Clay county upon numerous parcels of real estate and shares of stock as the property of the defendant L. D. Fowler. On the same day that the petition was filed, an affidavit for service by publication was made and filed in the case, which stated the object and prayer of the petition was to recover the amount due upon a promissory note, and "that the plaintiff has procured a writ of attachment in said action, by which it is sought to subject to the payment of said debt all the rights, credits, goods and chattels, lands and tenements of said L. D. Fowler, which may be found in said Clay county and state of Nebraska. Affiant further says that said defendant L. D. Fowler is a nonresident of Nebraska and that service of summons can not be made within this state upon him." Summons was personally served upon Fowler in the District of Columbia by a person regularly appointed to serve the same, no appearance was made by the defendant, and, upon the hearing on the 24th day of March, 1902, a judgment was rendered in the case for the amount due, and ordering the sheriff to proceed, as upon execution, to advertise and sell so much of the attached property as will satisfy the judgment and costs. After this judgment had been rendered, it appearing that the attached property had been transferred by Fowler to the defendants herein, this action was begun for the purpose of clearing the title to the attached property so that it

might sell to advantage under the order of sale. No consideration was paid by Mrs. Jones to Fowler for any of the property.

The defendant contends that the evidence fails to show that the plaintiff was a judgment creditor of L. D. Fowler. Her position is that the judgment was absolutely void for the reasons: First, that the summons was served after the return day: Second, that the affidavit on which the service was based failed to show the existence of grounds for service by publication or personal service out of the state.

For convenience, we will consider the second assignment first. The argument of the defendant is that the language of the affidavit for service by publication, "That the plaintiff has procured a writ of attachment in said action, by which it is sought to subject to the payment of said debt all the rights, credits, goods and chattels, lands and tenements of said L. D. Fowler, which *may* be found in said Clay county and state of Nebraska," does not show that Fowler had any property in Clay county or in Nebraska, and, therefore, does not show that the court had jurisdiction to enter a judgment *in rem,* and that it is equivalent to a declaration that the plaintiff would subject, under her writ, any property belonging to Fowler in Clay county or state of Nebraska, if he had any therein, and that, in order to be sufficient, it was necessary to state that property of Fowler had been taken under the writ or that he had property or credits in this state.

It is questionable whether if this affidavit for publication stood alone it would furnish the proof of sufficient facts to warrant service by publication, but the record shows that, upon the same day, an affidavit in attachment and garnishment was filed which alleged, in the language of the statute, that the affiant "has good reason to believe and does believe" that certain corporations within the county of Clay each has in its possession property of the defendant L. D. Fowler, describing, specifically, the prop-

erty which it is charged each holds; and the record further shows, that an order of attachment was issued under the affidavit, and that, on the 11th day of February, the personal property described was attached, and that, on the 21st day of March, certain real estate of the defendant Fowler was also attached in Clay county. Judgment was rendered in the action upon the 24th day of March. At the time that judgment was rendered, the court found that due and legal service of summons had been made personally upon the defendant. In *Miller v. Eastman*, 27 Neb. 408, the facts were, that an action was brought in the district court for Otoe county to recover upon a promissory note. The defendant was a nonresident of this state. An affidavit for attachment was filed, setting forth, among other matters, that the defendant is a nonresident of the state of Nebraska, and that the affiant makes this affidavit for the purpose of procuring an order of attachment in said action. The affidavit for publication set forth the object of the action, that the defendant is a nonresident of the state of Nebraska, that service of summons can not be made upon the defendant within the state of Nebraska, and that affiant makes this affidavit for the purpose of procuring service upon said defendant by publication in manner prescribed by law. These affidavits were filed when the action was begun. It was objected that the district court never acquired jurisdiction in the attachment proceedings, but the court say:

"It will be observed that the affidavit complies substantially with the statute and is sufficient. And in a case of this kind, the court will look at the entire record, and if it appear from all the affidavits before the court issuing the attachment that the essential facts to confer jurisdiction were duly sworn to therein, the judgment will not be declared void; therefore, even if the affidavit for publication was defective, the defect is supplied by the affidavit for attachment, and is thereby cured. The court, therefore, in any view of the case, had jurisdiction and its judgment is not subject to collateral attack."

In *Welch v. Ayres,* 43 Neb. 326, it is held that the right
to institute and prosecute an action against a nonresident
debtor for the recovery of money only, and to serve sum-
mons upon him by publication under the third clause of
section 77 of the Code, depends as much upon the ex-
istence of the fact of the defendant's ownership of the
property within the state as upon the fact of his non-
residence, and the existence of both facts is essential
to the validity of the proceedings.    That service by pub-
lication can only be had against a nonresident who has
property in this state, and that it is proper and compe-
tent for the court to hear testimony as to whether or not
the defendant owned property in the state, to determine
the question of jurisdiction.    If it is clear, as is held in
that case, that the defendant may show that he owns no
property within this state, then jurisdiction does not de-
pend alone upon the averments in the affidavit for publica-
tion.    If the affidavits show even in inapt or unskillful lan-
guage that the defendant has property in the state, and
property is afterwards seized under the writ of attachment,
then jurisdiction is complete.    In this state the court ac-
quires jurisdiction over the *rem* by its seizure, and failure
to give the notice does not thereby cause the court to lose
jurisdiction so long as the action remains pending.    The
main question raised has been discussed and the law set-
tled by the well considered opinion of Commissioner
IRVINE in *Darnell v. Mack,* 46 Neb. 740, in which it is held
that a judgment rendered without substituted service on
the defendant in an attachment case against a nonresi-
dent whose property has been seized in this state is merely
erroneous and not void.    See also *Rachman v. Clapp,* 50
Neb. 648; *Brown v. Bose,* 55 Neb. 200.

By the affidavit for attachment and garnishment, the
service of the notice upon the garnishee thereunder and
the levy of the writ of attachment the plaintiff acquired a
lien upon the property of the judgment debtor in this
state.    The return of the officer showing these facts was
proper to be considered by the district court upon the

question of jurisdiction before the judgment was rendered. At the time of the rendition of the judgment, these facts were all before the court, it passed upon the question of service, and the judgment, so far as it subjects the attached property to its payment, is proof against collateral attack.

As to the objection to the time of service of the summons, it appears that the summons was issued to the sheriff of Clay county and was made returnable upon the fourth Monday after its date. The requirement of the statute is that it be made returnable upon the second Monday after the date thereof, and that, if issued to another county, it may be made returnable at the option of the plaintiff upon the third or fourth Monday after its date. The service was made and the summons returned within the time specified upon its face, but the argument of the defendant is that the clerk had no authority to extend the return day from the second until the fourth Monday, that his action in doing so was a nullity, and that therefore the summons was returned after the return day and was therefore wholly void. The question of the effect that the inserting of an erroneous return day in a summons has upon the service made under such circumstances, was before this court in *Ley v. Pilger,* 59 Neb. 561, and it was there held that this defect is merely an irregularity and does not render the process void.

Where there is actual personal service of process upon the defendant, and the defendant does not appear and object on the ground of irregularity in the summons, and a judgment is rendered against him under such service, the judgment is not void but voidable, and is not open to collateral attack. It appears that Fowler was actually served with the summons and that time was given him to answer. The fact that an erroneous date was mentioned as the date of the return of the summons might have been taken advantage of by him by proper motion. This not having been done, and a judgment rendered wherein the court considered the question of

service, its judgment in that respect is final. *Gandy v. Jolly*, 35 Neb. 711; *Campbell Printing Press & Mfg. Co. v. Marder*, 50 Neb. 283.

The defendant's second proposition is that the plaintiff's action is barred by the statute of limitations, for the reason that the deed of conveyance of the real estate was dated April 17, 1897, and was recorded in the office of the county clerk of Clay county upon April 23, 1897. This action was begun upon April 24, 1902, which was 5 years after the recording of the deed. Our statute provides that an action for relief on the ground of fraud must be brought within 4 years, but the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud. The shares of stock in the corporations were transferred upon the books of the corporations in September, 1896. There is no evidence to show that the plaintiff had any knowledge of Fowler's ownership of this stock before he transferred it, or of the transfer of the same until a short time before the beginning of this action. As to the transfer of such shares of stock she had no notice or knowledge, either actual or constructive, until within 2 years before her action was begun, and hence her right to reach the same has not been barred by the statute of limitations.

As to the real estate, at the time the deed to the same was recorded, it was sent by Fowler from Washington, D. C., to the county clerk of Clay county for record and, after recording, was returned to him at the same place. There is no evidence in the record to show at what time, if ever, it was delivered to Mrs. Jones. When the deed was recorded, the property had only been conveyed to Fowler about 9 months previously. The parties were divided by the width of the continent. Fowler had not lived in Clay county for more than 6 years, and Mrs. Danforth was a resident of Los Angeles, California, and had never lived in Clay county. The note sued upon in the attachment suit was dated 37 days after the fraudulent transfer of the real estate was made, and nearly 18

months after the certificates of stock had been transferred. At the time the note was given, Fowler stated to the plaintiff that the Omaha property was all that he had and all that he could give her. The rule undoubtedly is, in this state, that, in an action brought more than 4 years after the recording of a conveyance seeking to set the same aside as fraudulent, the plaintiff must show that the circumstances were not such as to put a person of ordinary intelligence and prudence upon inquiry which, if pursued, would lead to a knowledge of the fraud. The recording of a deed is a circumstance strongly tending to show knowledge or the means of knowledge, but the circumstances of each case must govern. The same strictness is not to be enforced where the parties live at a distance from the county where the real estate lies, and where the plaintiff in the case had no knowledge that any property stood in the name of the judgment debtor in that county, as where both parties live in the county where the land lies, or are so situated in other respects that knowledge could fairly and reasonably be presumed from all the circumstances of the case. There may be circumstances under which the recording of a fraudulent deed to his real estate by a debtor is sufficient to put the creditor upon inquiry which, if pursued, would lead to the discovery of the fraud, and thereby amount to a discovery of the fraud sufficient to set the statute in motion, but the fact of the recording of the fraudulent deed is not of itself alone sufficient to charge the creditor with notice of the fraud. That part of the syllabus in *Gillespie v. Cooper,* 36 Neb. 775, as follows: "It seems that the fraud, within the meaning of said section 12, is discovered when the fraudulent deed is recorded in the county where the debtor lives," is disapproved, and the rule followed which is announced in *Forsyth v. Easterday,* 63 Neb. 887, as follows: "The recording of a fraudulent deed is not of itself, under all circumstances, sufficient to charge all parties with notice of the fraud. When accompanied with circumstances sufficient to put a person

of ordinary intelligence and prudence upon inquiry, which, if pursued, would lead to a discovery of the fraud the statute begins to run from the recording of the deed, but not otherwise."

In this case, where the creditor and debtor lived 5,000 miles apart, and the property which was fraudulently conveyed was situated in Nebraska, where neither resided, where the evidence showed that the debtor had owned the property only a few months before the transfer, and stated to the creditor, at the time he executed the note which was sued upon, that he had no other property except that upon which he was then giving her a second mortgage, where some degree of trust and confidence between the parties might exist from the former close business relations of the plaintiff's former husband with the debtor, and where it is proved that the plaintiff had no actual knowledge of the fraudulent transfer until a short time before the beginning of this action, her right to bring the same has not been barred by the statute.

The defendant's third proposition is that the plaintiff was a subsequent creditor and, under the state of pleadings and evidence, is not entitled to relief against the defendants. This argument is based upon the fact that the fraudulent conveyances were made a short time before the giving of the note which was afterwards merged in the judgment, and upon the theory that the giving of the new note paid the antecedent debt, and, consequently, made the plaintiff a subsequent creditor who would have no right to complain of any voluntary conveyance made by the debtor before the debt was contracted. It seems to us that this contention merits slight consideration.

It is nowhere alleged in the defendant's answer that the debt which existed, at the time of the transfers complained of, had been fully settled and discharged by Fowler, at the time of the giving of the new note; and it is clear that, where a note is merely given in renewal of a former note, this fact does not change the relations between the parties with reference to a fraudulent transfer

of his property by the debtor. "According to the general doctrine a promissory note, though negotiable, given by a debtor to his creditor, does not operate as payment of a preexisting indebtedness, in the absence of an agreement between the parties that it shall so operate." 22 Am. & Eng. Ency. Law (2d ed.), 555, and cases cited. That this note was taken in payment of the debt has neither been pleaded nor proved, and hence this contention can not be sustained.

For these reasons, we recommend that the judgment of the district court be affirmed.

DUFFIE and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.