# CHARLESTON.

WILLIAMS *et al.* v. CROFT HAT & NOTION Co. *et al.*

Submitted September 10, 1918.   Decided September 17, 1918.

1. CORPORATIONS—*Sale of Corporate Assets—Contract of Stockholders —Construction.*

   A written contract made by the individual stockholders of a corporation disposing of the corporation assets and taking in lieu thereof stock' in a new corporation, and attempting to appoint trustees as the holders of the legal title to such stock for a period of ten years with power to vote the same in all stockholders' meetings of the new corporation, and which expressly provides that it shall not become operative or binding on any signer thereto until the owners of all the shares of stock of the corporation shall have signed and ratified it, is void unless such condition has been complied with.   (p. 558).

2. SAME—*Sale of Corporate Assets—Suit by Stockholder—Laches.*

   Laches cannot be imputed to a non-resident stockholder who refuses to sign such agreement and who has no knowledge of the attempt by the other stockholders, who did sign it, to put it into operation, for a period of nearly four years, and who brings his suit to cancel it within eight months after learning thereof. (p. 553).

3. EQUITY—*"Laches."*

   Delay to assert one's right, when properly explained, is not laches.   (p. 553).

4. SAME—*Acquiescence.*

   Acquiescence cannot be imputed to one who is ignorant of the facts on which it is predicated.   (p. 553).

5. CORPORATIONS—*Performance of Corporate Functions—Dissolution —Disposition of Proceeds.*

   A bill brought by one-fifth in interest of the stockholders of a corporation, alleging that the corporation has sold all of its assets and has made no distribution of the proceeds to the individual stockholders, and has ceased to hold any stockholders or directors' meeting or to perform any of its corporate functions for a period of two consecutive years or more, is maintainable under Sec. 57, Ch. 53, Barnes' Code, and shows "sufficient cause" *prima facie* entitling plaintiffs to a decree dissolving such corporation and distributing such proceeds among the stockholders. (p. 554).

   (MILLER, JUDGE, dissenting).

Appeal from Circuit Court, Cabell County.

Bill by J. M. Williams and others against the Croft Hat & Notion Company and others. Demurrer to bill sustained, suit dismissed, and plaintiffs appeal.

*Reversed and remanded.*

*Livezey & Irons* and *Campbell, Brown & Davis,* for appellants.

*Williams, Scott & Lovett,* for appellees.

WILLIAMS, JUDGE:

This suit is brought by J. M. Williams, A. P. Hudson and H. O. Boette, stockholders in the Croft Hat & Notion Company, a West Virginia corporation, against the said corporation, C. C. Henking, S. M. Croft and J. R. McMahon, as trustees and also in their individual rights, and others, stockholders in said corporation, praying for its dissolution and the winding up of its business, and for the cancellation of a certain voting trust agreement entered into between the stockholders of said corporation and the aforesaid trustees on the 28th of July, 1913, and also for general relief. The court sustained a demurrer to the bill and dismissed the suit, plaintiffs not desiring to amend, and they have appealed.

The first question presented is whether the averments of the bill are sufficient to show a right in plaintiffs to maintain the suit. It appears from the bill that the capital stock of the Croft Hat & Notion Company did not exceed $100,000 and that plaintiffs own more than one-fifth of it; that said corporation was, until sometime in 1913, engaged in the wholesale dry goods and notion business in the City of Huntington, and since that time has ceased to carry on its business as a corporation; that on the 8th of July, 1913, S. M. Croft, who was then president of said corporation, agreed with O. L. Stanard that they would organize a new corporation to be called the Croft-Stanard Company, with a capital stock of $300,000, $100,000 of which was to be preferred stock bearing 7% interest, and the remaining $200,000 common stock which was to be divided equally between said Croft

and Stanard, to be placed as they should elect; that said
Croft agreed to deliver all the stock of goods and fixtures
owned by the Croft Hat & Notion Company, which for the
sake of brevity we will call the old corporation, to the new
corporation to be thereafter formed, at a price to be agreed
upon, and said Stanard was to convey to the new corporation
certain real estate which he owned in the City of Huntington,
and the new company was to take over all the bills receivable
and assume all the liabilities of the old corporation.  At gen-
eral meeting of the stockholders of the old corporation, held
on the 26th of July, 1913, the aforesaid agreement was sub-
mitted to the stockholders and approved by a resolution duly
passed, and pursuant thereto the new corporation, known as
the Croft-Stanard Company, was organized, and is now en-
gaged in the same kind of business in the City of Huntington
that was previously carried on by the old corporation.  No
corporate action has been taken by the old corporation with
reference to the disposition or distribution of its 1000 shares
of stock in the new corporation, nor has there, since that
time, been a meeting of its stockholders or directors.  But
on the 28th of July, 1913, a written agreement was entered
into between S. M. Croft, C. C. Henking and S. P. Robert-
son, as trustees, of the one part, and all of the individual
stockholders of the old corporation, except the plaintiff J.
M. Williams, of the other part, which was to continue until
the 1st of August, 1923, reciting the sale of the corporation's
assets to the proposed Croft-Standard Company, and the reso-
lution approving the same, whereby it was agreed that the
new company should issue to said trustees and their succes-
sors 1000 shares of stock in the new company for the assets
of the old corporation, and providing that it should be held
by them as attorneys in fact for the respective stockholders
of the old corporation, and that there should be issued to
said stockholders assignable "voting trust certificates" in
proportion to the stock in the old corporation previously
held by them.  J. M. Williams refused to sign or ratify the
agreement, and it contains a clause providing that it "shall
not become operative or binding on any signer thereto until
the owners of all the shares into which the stock of the Croft

Hat & Notion Company is divided shall have signed and ratified" it. It is averred that the value of the assets of the old corporation, which it turned over to the new corporation, did not exceed $60,000, and that the aforesaid trustees executed to the new corporation their note for the difference between said value and the $100,000 of stock in the new company, which the old corporation was to receive, and that the $100,000 of stock was issued to the trustees and they had pledged it to secure their aforesaid note; that, subsequently, said trustees borrowed money with which to pay their note and again pledged said stock to secure the payment of the money borrowed; that no corporate action was ever taken by the old corporation authorizing or ratifying the aforesaid voting trust agreement. The bill avers that the trustees have received several dividends on the 1000 shares of stock in the new company and have made no distribution thereof to the holders of the stock in the old corporation or the trust cer- tificates, but that they have used it, and permitted it to be used to discharge indebtedness and obligations of the old corporation incurred since the sale and transfer of all its assets to the new company, such, for instance, as in the payment of corporation license taxes; that they have also per- mitted some of the money, thus coming into their hands, to be applied to the payment of individual obligations of said S. M. Croft; and that the liabilities of the old corporation exceed its assets and, consequently, it is insolvent.

Taking the averments of the bill as true, the plaintiff J. M. Williams was a stockholder in the old corporation at the time the trust agreement was made between the other stockholders and the trustees, the latter being also stockholders, and re- fused to sign or ratify it. It is not necessary for us to de- cide whether or not the alleged trust agreement would have been binding on all the stockholders who signed it, in the absence of corporate action approving it and in the absence of the provision, above quoted, or a similar one, rendering it inoperative as to anyone unless signed or ratified by all, for the reason that that provision is unambiguous and must be given effect. It means that the agreement had to be unanimous among all the stockholders, or it was not an agree-

ment as to any of them. Counsel for appellees contend that Williams is guilty of laches, that his long continued silence amounts to acquiescence and is, in effect, a ratification. We think not. The bill makes satisfactory explanation of his apparent laches. He was a resident of the distant state of Oregon and did not know that the trustees were attempting to execute the alleged agreement until December, 1916, and he brought his suit August 30th, 1917, a reasonable time thereafter. Laches is inexcusable delay and, in order that mere delay should be inexcusable, it is essential that the party charged therewith should have had knowledge of such facts as, if diligently pursued, would have disclosed his right. Laches is not like a statute of limitations and is not necessarily implied from mere lapse of time. *Cresap* v. *Cresap*, 54 W. Va. 581. Acquiescence cannot be imputed to a person ignorant of the facts on which it is predicated. *Rowe* v. *Bentley*, 29 Grat. 763, and *Lamar's Exor.* v. *Hale*, 79 Va. 146.

Section 57, chapter 53, Barnes' Code, provides that the owners of not less than one-fifth in interest of the stock of a corporation may file their bill in equity for its dissolution and the winding up of its affairs, setting forth in their bill the grounds therefor, and makes it the duty of the court, "if sufficient cause" be shown, to grant the relief, "and make such orders and decrees and award such injunctions in the cause as justice and equity may require." It is averred in the bill that plaintiffs owned more than one-fifth interest in the stock of the old corporation, and that the corporation had ceased to do business or to perform any corporate function whatever; that there has been no meeting of the stockholders or board of directors since the stockholders' meeting held on the 26th of July, 1913; that it has sold all of its assets and accepted in payment therefor $100,000 of stock in the Croft-Stanard Company, a new corporation, and has taken no corporate action providing for the distribution of said stock among the stockholders of the old corporation. These averments, which must be taken as true on the demurrer to the bill, show the requisite amount of interest in plaintiffs and a "sufficient cause" entitling them to relief. Section 7

of the same chapter provides that, if a corporation "suspends its proper corporate business at any time for two years continuously, its corporate rights and privileges shall cease." These two statutes considered together clearly give a court of equity jurisdiction to wind up the affairs of a corporation, chartered under the laws of this state, which has failed to perform any corporate function whatever for two consecutive years, on a bill filed for that purpose by the owners of more than one-fifth in interest of its capital stock.

Under a similar statute of Illinois, the supreme court of that state, in *Wheeler et al.* v. *Pullman Iron & Steel Co ,* 143 Ill. 197, held that, the good cause necessary to be shown to entitle a court of equity to dissolve a corporation and wind up its affairs was such legal cause "for which the sovereign authority might by law resume the franchises granted;" that it could not be presumed that the legislature intended by the statute to authorize a decree forfeiting the franchise for causes which the state might not procure a judgment of forfeiture at law. To the same effect is the holding of the supreme court of Iowa, under a similar statute, in *Planter* v. *Kirby et al.,* 115 N. W. 1032. See also 2 Cook on Corp., (7th ed.), Sec. 629.

It is not necessary, for the purposes of this case, for us to decide whether or not a court of equity is authorized to dissolve a corporation on the showing of any cause for which the state might revoke its charter. But what we do decide is, that the voluntary sale of its assets and failure to distribute the proceeds among the stockholders, abandonment of its corporate business and failure to hold any stockholders or directors' meetings for a period of two years, constitute sufficient cause for the dissolution of a corporation by a court of equity in a suit brought by one-fifth of the stockholders, under section 57, chapter 53, Code.

Counsel for appellees cite and rely upon *Hurst* v. *Coe,* 30 W. Va. 158, and *Law* v. *Rich et al.,* 47 W. Va. 634, as authority to sustain the proposition that mere suspension of corporate business and failure to hold stockholders' meetings and elect directors for a period of two years or more is not a sufficient cause to authorize a court of equity to decree

a dissolution of a corporation. We do not so understand those cases. The first of said cases was a suit by a majority of the stockholders in a corporation, brought against the remaining stockholders for the purpose of selling its assets and dissolving the corporation, and while the bill did aver that there had been no meeting of the stockholders or directors for a period of two or three years, the corporation had not been made a party. At that time the statute required at least one-third in interest of the stockholders to join in a bill to dissolve, but by an act of 1915, chapter 38, it was amended so as to permit holders of an interest of not less than one-fifth to file such bill. It was there held that, notwithstanding the plaintiffs, they being a majority in interest of the stockholders, had the right to sell its assets and surrender its charter, by a resolution duly passed at a stockholders' meeting, still there was no reason why they should not also have the right to file a bill to have it done by a court of equity, on a showing of good cause. A demurrer to the bill was overruled by the court below, and an answer was filed and depositions were taken and the case disposed of upon its merits. But the bill did not make the corporation itself a party, and on appeal this court held that it was a necessary party, reversed the decree of the lower court and remanded the cause with leave to plaintiffs to amend their bill. It does not hold that a cessation of the corporate action or business for a period of two years is not a sufficient cause for dissolution in equity; in fact, the question could not properly have been decided in the absence of the corporation.

The second of said cases was not a suit brought under section 57, chapter 53, Barnes' Code, but was a suit brought by a lessor of an oil and gas lease made to a third person and by him assigned to the corporation, to recover royalties. And while the fourth point of the syllabus of that case does hold that, "A mere cessation, or suspension, or discontinuance by a corporation of its corporate business, unless by resolution of its stockholders to discontinue business, will not operate as a dissolution of a corporation," it simply means that the mere cessation of business does not *ipso facto* operate to dissolve the corporation, that in the absence of a stockholders'

resolution to surrender its charter, a decree or judgment of a court of competent jurisdiction is necessary to work a dissolution. It does not hold nor does it mean to decide, that such discontinuance of its corporate functions for two years or more would not be a sufficient cause justifying a decree of dissolution on a bill brought by one-fifth in interest of the stockholders.

The case of *Ward* v. *Hotel Randolph Co.*, 65 W. Va. 721, is also relied on to sustain the proposition, that it was essential for plaintiffs first to have made application to the assembled directors or stockholders for a redress of their grievances in order to entitle them to maintain the suit. Although that was a suit by a stockholder, the bill presented a case of alleged mismanagement and misappropriation of the funds by the managing officers of the corporation and was, therefore, a case in which the primary right to correct it was in the corporation itself. The corporation had not ceased to perform its functions, nor did the bill seek its dissolution. The plaintiff simply desired to take over the corporate management by having a receiver appointed, and the court there properly held that plaintiff could not maintain his suit unless he showed that he had first applied to the corporation and had been refused relief by it. Courts of equity will not ordinarily undertake the administration of corporate affairs so long as the corporation continues to do business, simply because the business is not a success in the view of some of its stockholders, unless complainant has first applied to, and has been denied relief by the councils of the corporation itself.

It was not necessary in the present case for plaintiffs to apply to the corporation for relief, because the bill alleges that it had ceased to do business and had held no stockholders' meetings and elected no directors for a period of about four years. In such case the statute, section 57 of chapter 53, gives a primary right to one-fifth in interest of the stockholders to bring a suit for its dissolution.

It is contended that the bill is multifarious. We do not think so. No parties, other than those interested in the relief sought, are parties to the bill, and all the relief prayed

for is incidental to the winding up of the corporation and the distribution of its assets. The demurrer to the bill should have been overruled.

The decree is reversed and the cause remanded, with leave to defendants to answer, and for further proceedings.

*Reversed and remanded.*