BANK OF MARLINTON, etc. v. L. P. McLAUGHLIN, et al.

(CC 603)

Submitted January 17, 1939. Decided February 7, 1939.

Richard F. Currence, for plaintiff.
Summers H. Sharp, for defendants.

MAXWELL, JUDGE:

The sole question herein for decision is the sufficiency of an amended bill to which the trial chancellor sustained a demurrer, and certified to this court the queries whether the plaintiff has presented a cause for equity cognizance, and whether laches appears from the allegations of the amended bill, barring the plaintiff from the right to prosecute this suit.

The proceeding is based on Code, 40-1-1, which condemns conveyances or charges upon real or personal property executed with intent to delay, hinder, or defraud creditors. The object of the suit is to cancel and set aside as a fraud against the plaintiff a deed executed by L. P. McLaughlin May 18, 1931, conveying to his wife, Julia, a tract of 25 acres of land near Hillsboro in Pocahontas County. It is alleged in the amended bill that the fraudulent intent of the grantor was known to the grantee.

From the amended bill it further appears that at the time of the execution of the deed the plaintiff, as assignee and liquidating agent of the Bank of Hillsboro, held a negotiable note for $2,549.00, dated November 15, 1926, signed by L. P. McLaughlin, C. P. Brown, J. K. Marshall and A. W. McLaughlin, payable on demand to the Bank of Hillsboro. Against the makers of the note the plaintiff instituted an action of debt April 20, 1931. Process was promptly executed on all of the defendants except Brown. On the 18th of May, 1931, after process had been

served on L. P. McLaughlin in the action at law, the above mentioned deed from him to his wife was executed and acknowledged by him. Four days subsequently the deed was recorded in the office of the clerk of the county court of Pocahontas County. Later that year judgments on the debt were rendered in favor of the plaintiff against L. P. and A. W. McLaughlin and Marshall.

This suit, seeking cancellation of the deed as a fraud, was instituted early in 1938 and the original bill was filed at May Rules.

Because of the intervening of much time—a period of almost seven years—between the execution of the deed and the institution of this suit, the grantee in the deed, the defendant, Julia B. McLaughlin, assigns as the principal basis of her demurrer the laches of the plaintiff allegedly disclosed by the amended bill.

Lapse of time is an element but not the controlling factor of laches. 10 Ruling Case Law, p. 396. Unlike the inexorable bar of a statute of limitations grounded solely on the passing of time, laches does not arise *prima facie* from the mere fact that time has gone by within which equity might have been invoked. *Williams* v. *Croft Hat & Notion Co.*, 82 W. Va. 549, 553, 96 S. E. 929. Laches is delay which operates prejudicially to another person's rights. *Carter* v. *Carter,* 107 W. Va. 394, 148 S. E. 378.

If delay in the institution of a chancery cause can be reasonably explained *(Williams* v. *Croft Hat & Notion Co., supra),* and if no prejudice to another has resulted from the delay *(LePage* v. *Bailey,* 114 W. Va. 25, 170 S. E. 457)*, essential bases for application of the doctrine of laches are non-existent.

In the amended bill the plaintiff alleges that this suit was not instituted at an earlier date because no officer nor agent of the plaintiff had knowledge of the Mc-Laughlin deed of May 18, 1931, until a short time prior to the institution of this suit; that following the date of the execution of the deed by L. P. McLaughlin to his wife there was no change of possession of the property, and no circumstance nor incident of any kind had caused any

representative of the plaintiff to deem it necessary to examine the public records of the county to ascertain if the McLaughlin land had been aliened or encumbered subsequent to the time that McLaughlin became indebted under the note above mentioned.

For the demurrant, however, it is urged that the recordation of the McLaughlin deed in May, 1931, made available to representatives of the bank the information that the transfer had been made, and if they did not take advantage of the opportunity to obtain the actual information from the record the fault is theirs and they should not now be heard to say they remained ignorant of the transaction until just prior to the institution of this suit.

This raises the interesting and important question whether the recordation of a deed operates as constructive notice to antecedent creditors.

Our recordation statute provides that a title paper affecting real estate "shall be void as to creditors, and subsequent purchasers for valuable consideration without notice, until and except from the time that it is duly admitted to record in the county wherein the property embraced in such contract, deed, trust deed or mortgage may be." Code, 40-1-9. The purpose of the statute is to protect a *bona fide* purchaser of land against creditors of the grantor, and against other persons to whom the grantor might have undertaken to execute title papers pertaining to the land embraced in the recorded instrument. Complementally, the statute affords protection to creditors against an alienee of the grantor under an unrecorded deed, deed of trust or contract executed by him. After a *bona fide* claimant under a paper creating an interest in land has recorded the same, it is effective against an unrecorded paper of the same grantor affecting the identical land, and is likewise a bar to a creditor of the grantor who seeks to subject the land to the payment of his debt and has not obtained and recorded or docketed a lien against the land prior to the time that the recorded instrument was admitted to record. But this, of course,

is based on the *bona fides* of the grantee who records his deed or other title paper. Under statute and settled equitable principles, a prior creditor has the right to attack the recorded instrument for fraud. The fact of the recordation, in itself, neither increases nor diminishes the creditor's right. If the recordation has not come actually to the attention of the creditor, and if no circumstance has transpired which should put him on inquiry, there could not with propriety be an adjudication that the recordation of the instrument should operate as constructive notice to the creditor of the existence of the recorded instrument. Such a holding would place on creditors generally the responsibility and burden of examination at short intervals of the public records to ascertain if, forsooth, a trusted debtor had suddenly become fraud-minded and was seeking to circumvent his creditors by fraudulent alienation of property. The statement of the proposition carries its own refutation. Such is not the purpose of recordation statutes. "The pre-existing creditor has the right to rely upon the condition of his debtor when the debt is created; and unless he be put upon notice, he is not bound to keep constant watch over the public records for the voluntary conveyances his debtor may make, else be barred by limitation, regardless of the time of actual discovery or its equivalent." *Ward v. Thomas,* 81 Ky. 452, 455. Consult II Pomeroy's Equity Juris. (4th Ed.), secs. 656, 657. With all the more reason does this rule apply where the recorded conveyance lies in fraud. "The fact of the recording of the fraudulent deed is not of itself alone sufficient to charge the creditor with notice of the fraud." *Jones v. Danforth,* 71 Neb. 722, 99 N. W. 495, 498. Consider *Stivens v. Summers,* 68 Ohio St. 421, 67 N. E. 884.

It is not within legislative or judicial contemplation that a recording act can become either a haven of refuge for a fraudulent grantor or a shield of defense for a grantee in iniquity.

The grantor and grantee in the deed under attack are living and are before the court as defendants to the

amended bill. So far as appears from the record, they can as well now defend against the charge of fraud as they could have done had the suit been instituted more promptly. Nor does it appear that the rights of any third person have intervened.

It follows that the amended bill does not disclose laches. There is sufficiently presented a cause for determination in equity.

The demurrer should have been overruled.

For the reasons set forth we reverse the decree of the trial court and remand the case for further proceedings.

*Reversed and remanded.*